UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KHALIYQ SELLERS

(In the space above enter the full name(s) of the plaintiff(s).)

v.

Defendant No. 1 NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION DIVISION OF PAROLE

Defendant No. 2 etc. (see attached [full listing...])

Defendant No. 3

Defendant No. 4

Defendant No. 5

(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. No addresses should be included here.)

**COMPLAINT**
under the
Civil Rights Act, 42 U.S.C. § 1983

Jury Trial: Yes ✓   No ___
(check one)

16CV5746

---

I. Parties in this complaint:

A. List your name, identification number, and the name and address of your current place of confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff   Name KHALIYQ SELLERS
ID # 07-A-0883
Current Institution Fishkill Correctional Facility
Address 18 Strack Dr., Beacon, NY 12508 (until 7/31/16. Mailing address will be 724 Garden St. #3A, Bronx, NY 10457)

B. List all defendants' names, positions, places of employment, and the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

| | | |
|---|---|---|
| Defendant No. 1 | Name NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION..(see attached) | Shield # |
| | Where Currently Employed | |
| | Address | |
| Defendant No. 2 | Name | Shield # |
| | Where Currently Employed | |
| | Address | |
| Defendant No. 3 | Name | Shield # |
| | Where Currently Employed | |
| | Address | |
| Defendant No. 4 | Name | Shield # |
| | Where Currently Employed | |
| | Address | |
| Defendant No. 5 | Name | Shield # |
| | Where Currently Employed | |
| | Address | |

## II. Statement of Claim:

State as briefly as possible the facts of your case. Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A. In what institution did the events giving rise to your claim(s) occur? continuous conpiracy which began in civilian society until incarceration (Fishkill C.F.)

B. Where in the institution did the events giving rise to your claim(s) occur? Began in Bronx, NY to Beacon, NY.

C. What date and approximate time did the events giving rise to your claim(s) occur? Approximatelay January 2013 to current

D. Facts: see attached (labeled as pages 1 through 8)

*What happened to you?*

*Who did what?*

*Was anyone else involved?*

*Who else saw what happened?*

## III. Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. false imprisonment, malicious prosecution, loss of home, career, business, finances, personal property, family by way of death or disownment, associations/ affiliations, and receival of high anxiety, severe depression, insomnia, adjustment disorder, post-tramatic stress and fear of practicing my religion

## IV. Exhaustion of Administrative Remedies:

The Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Administrative remedies are also known as grievance procedures.

A. Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

Yes ___  No ___  some claims post incarceration

3

If YES, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s). <u>eventually Rikers Island C.F., Ulster C.F., Downstate C.F., Washington C.F. and Fishkill C.F.</u>

B. Does the jail, prison or other correctional facility where your claim(s) arose have a grievance procedure?

Yes ✓   No ___   Do Not Know ___

C. Does the grievance procedure at the jail, prison or other correctional facility where your claim(s) arose cover some or all of your claim(s)?

Yes ___   No ___   Do Not Know ✓

If YES, which claim(s)? <u>tried to grieve just in case. went ignored until sent by certified mail</u>

D. Does the grievance procedure at the jail, prison or other correctional facility where your claim(s) arose <u>not</u> cover some of your claim(s)?

Yes ✓   No ___   Do Not Know ___

If YES, which claim(s)? <u>assuming allegations which occured in society</u>

E. Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose?

Yes ✓   No ___

If NO, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

Yes ___   No ___

F. If you did file a grievance, about the events described in this complaint, where did you file the grievance? <u>eventually filed in Fishkill C.F. others prior have disappeared, which is actually normal</u>

1. Which claim(s) in this complaint did you grieve? <u>false imprisonment via fraud and religious discrimination</u>

2. What was the result, if any? <u>partially pending. ofcourse they insinuate I am lying</u>

3. What steps, if any, did you take to appeal that decision? Describe all efforts to appeal to the highest level of the grievance process. <u>currently sent to Superintendent by certified mail</u>

4

G.  If you did not file a grievance, did you inform any officials of your claim(s)?
    Yes ____   No ____
    1. If YES, whom did you inform and when did you inform them? _I told P.O.T.U.S., news media, State Attorney General, lawyers, Mayor, governor, Chairperson of Div. of Parole, everyone_

    2. If NO, why not? ____

I.  Please set forth any additional information that is relevant to the exhaustion of your administrative remedies. _filed numerous Habeas Corpus petitions, Article 78, general complaints to everyone_

Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.

V.  Relief:
State what you want the court to do for you. _injunctive relief suc as cancelation of my Post-Releas supervision, prevention of Parole involvement in matters irrelevant to their duties, prevention of revocations that are not within their authority (they said the statement equals an action), dismissal of individuals involved from jobs, award in the amount of $73,000,000 usd, apology and what this court deems further to be just and proper_

VI. Previous lawsuits:

A.  Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?
    Yes ✓   No ____

[On these claims]

5

B. If your answer to A is YES, describe each lawsuit in questions 1 through 7 on the next page. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same format.)

1. Parties to this previous lawsuit:
Plaintiff KHALIYQ SELLERS
Defendants CITY OF NEW YORK
2. Court (if federal court, name the district; if state court, name the county)
NEW YORK COUNTY, SUPREME COURT (60 Centre St.)
3. Docket or Index number  101071/ 14
4. Name of Judge assigned to your case  unknown
5. Approximate date of filing lawsuit  mid or end of 2014
6. Is the case still pending? Yes ✓  No ___
If NO, give the approximate date of disposition ___
7. What was the result of the case? (for example: Was the case dismissed? Was there judgment in your favor? Was the case appealed?)  pending

On other claims

D. Have you filed other lawsuits in state or federal court otherwise relating to your imprisonment? Yes ✓  No ___

E. If your answer to D is YES, describe each lawsuit in questions 1 through 7 on the next page. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same format.)

1. Parties to this previous lawsuit:
Plaintiff KHALIYQ SELLERS
Defendants SUCCESS COUNSELING
2. Court (if federal court, name the district; if state court, name the county)
BRONX COUNTY, SUPREME COURT (851 Grand Concourse)
3. Docket or Index number  unavailable
4. Name of Judge assigned to your case  unknown
5. Approximate date of filing lawsuit:  approximately mid 2015?
6. Is the case still pending? Yes ✓  No ___
If NO, give the approximate date of disposition  awaiting poor persons
7. What was the result of the case? (for example: Was the case dismissed? Was there judgment in your favor? Was the case appealed?)
awaiting poor person. ruled that I need attorney certificate since filed summons without complaint

Signed this 14 day of JULY, 2016 I declare under penalty of perjury that the foregoing is true and correct.

Signature of Plaintiff
Inmate Number: 07A0883
Mailing address: 724 GARDEN ST. #3A, BRONX, NY 10457  -AND-  630 PUGSLEY AVE. #8F, BRONX, NY 10473

Note: All plaintiffs named in the caption of the complaint must date and sign the complaint and provide their inmate numbers and addresses.

I declare under penalty of perjury that on this 14 day of JULY, 2016 I will deliver this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff:

rev. 09/04

(attached full listing of Plaintiff[s] and Defendant[s] as to be captioned)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KHALIYQ SELLERS
                Plaintiff(s),

    -against-

NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION DIVISION OF PAROLE; STATE OF NEW YORK; CITY OF NEW YORK; JOSEPH M. GATES, Parole Officer; SANTIAGO, Senior Parole Officer; LEE LESSNER, Parole Officer; FREEMAN, Senior Parole Officer; LELEITH SHAW, Parole Revocation Specialist; CHANDRA-PERRY PATTERSON, Administrative Law Judge; TINA STANFORD, Chairperson of the New York State Department of Corrections and Community Supervision Division of Parole; WILBERT WEBB, Success Counseling Counselor; ELPIDO ORTIZ, Success Counseling Administrative Assistant; IRVING EPSTEIN, Correction Officer; MATTHEW PEDLAR, Correction Officer; MARK LOADHOLT, Correction Officer; PELLUSO, Correction Officer; NEW YORK CITY POLICE DEPARTMENT; JOHN DOE #1, Police Officer; JOHN DOE#2, Police Officer; JOHN DOE #3, Police Officer; JOHN DOE #4, Police Officer;

                Defendant(s).

(parties in the complaint/ action, as required per section I of COMPLAINT)

A.
Plaintiff   KHALIYQ SELLERS
            ID# 07-A-0883
            Current Institution: Fishkill Correctional Facility,
            located at 18 Strack Dr., Box 1245, Beacon, NY 12508
            As anticipated to be released from imprisonment on
            or about July 31, 2016, adress will be: homeless, with
            ability to receive mail at address of 724 Garden St.,
            Apt# 3A, Bronx, NY 10457 and 630 Pugsley Ave., Apt# 8F,
            Bronx, NY 10473

B.
Defendant   NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY
#1          SUPERVISION DIVISION OF PAROLE
            Address: Bldg. 2, 1220 Washington Ave., Albany,
            NY 12226


Defendant   STATE OF NEW YORK
#2          Address:


Defendant   CITY OF NEW YORK
#3          Address:


Defendant   JOSEPH M. GATES, Parole Officer
#4          Employed by: Defendant #1
            Work Address: Bronx Division of Parole Office, located
            at 79 Alexander Ave., Bronx, NY


Defendant   SANTIAGO, Senior Parole Officer
#5          Employed by: Defendant #1
            Work Address: Bronx Division of Parole office, located
            at 79 Alexander Ave., Bronx, NY


Defendant   LEE LESSNER, Parole Officer
#6          Employed by: Defendant #1
            Work Address: Bronx Division of Parole office, located
            at      Alexander Ave., Bronx, NY


Defendnat   FREEMAN, Senior Parole Officer
#7          Employed by: Defendant #1
            Work Address: Bronx Division of Parole office, located
            at      Alexander Ave., Bronx, NY

Defendant #8   LELEITH SHAW, Parole Revocation Specialist
              Employed by: Defendant #1
              Work Address: Rikers Island Judicial Center a.k.a. Ronald Cranston Judicial Center, located at Hazen St., East Elmhurst, NY 11370

Defendant #9   CHANDRA-PERRY PATTERSON, Administrative Law Judge
              Employed by: Defendant #1
              Work Address: Rikers Island Judicial Center a.k.a. Ronald Cranston Judicial Center, located at Hazen St., East Elmhurst, NY 11370

Defendant #10  TINA STANFORD, Chairperson of the New York State Department of Corrections and Community Supervision Division of Parole
              Employed by: Defendant #1
              Work Address: Bldg. 2, 1220 Washington Ave., Albany, NY 12226

Defendant #11  WILBERT WEBB, Success Counseling Counselor
              Employed by: Success Counseling
              Work Address: 1015 Ogden Ave., Bronx, NY 10452

Defendant #12  ELPIDO ORTIZ, Success Counseling Administrative Assistant
              Employed by: Success Counseling
              Work Address: 1015 Ogden Ave., Bronx, NY 10452

Defendant #13  IRVING EPSTEIN, Correction Officer
              Employed by: New York City Department of Corrections
              Work Address: Rikers Island Judicial Center a.k.a. Ronald Cranston Judicial Center, located at Hazen St., East Elmhurst, NY 11370    Shield No.: 18514

Defendant #14  MATTHEW PEDLAR, Correction Officer
              Employed by: New York City Department of Corrections
              Work Address: Rikers Island Judicial Center a.k.a. Ronald Cranston Judicial Center, located at Hazen St., East Elmhurst, NY 11370    Shield No.: 4988

Defendant #15  MARK LOADHOLT, Correction Officer
              Employed by: New York City Department of Corrections
              Work Address: Rikers Island Judicial Center a.k.a. Ronald Cranston Judicial Center, located at Hazen St., East Elmhurst, NY 11370    Shield No.:

```
Defendant   PELLUSO, Correction Officer
#16         Employed by: New York City Department of Corrections
            Work Address: Rikers Island Judicial Center a.k.a.
            Ronald Cranston Judicial Center, located at
            Hazen St., East Elmhurst, NY 11370    Shield No.:


Defendant   NEW YORK CITY POLICE DEPARTMENT
#17         Address: One Police Plaza, New York, NY 10038


Defendant   JOHN DOE #1, Police Officer
#18         Employed by: Defendant #17
            Work Address:


Defendant   JOHN DOE#2, Police Officer
#19         Employed by: Defendant #17
            Work Address:


Defendant   JOHN DOE #3, Police Officer
#20         Employed by: Defendant #17
            Work Address:


Defendant   JOHN DOE #4, Police Officer
#21         Employed by: Defendant #17
            Work Address:
```

(statement of facts)

1.  During a scheduled office report in January of 2013, my Post Release Supervision officer, P.O. J. M. Gates, informed me that I am being watched/ under surveillance based on my religion of Islam, by the New York State Department of Corrections and Community Supervision Division of Parole along with the New York City Police Department. On dates between at least January 2013 and 2/14/13, agents of the N.Y.P.D. questioned my business associates/ associates on Fordham Roard in Bronx, New York, as I have been informed by associates, regarding me and my religious beliefs and actions. On one date I was shopping on Fordham Road and I placed the bags I was already carrying in the care of a store owner who is Muslim so that I could shop without lugging around numerous bags. When I returned to retrieve the bags from said Muslim store owner, he told me an agent came in and flashed what was a N.Y.P.D. bagde and asked him what was it I passed him in the bags. Also, due to this behavior and line of questioning I have been informed of, after finalizing an agreement with another store owner on Fordham Road in which I would be renting space in a prime real-estate location, said owner cancelled said agreement and informed me I would have to immediately remove my products from the store, since I had already begun to move said product in, and ceased any further dealings with me.

2.  On 2/14/13, I was arrested for an alleged Post-Release supervision violation. During said arrest, I began crying and begging the arresting officer, P.O. J. M. Gates, and the Senior Parole Officer, S.P.O. Santiago, not to arrest me. I did say that this arrest would ruin my life as I would lose my home and property and my career in the Green Energy Efficiency field which was put into play by President Obama. To this, S.P.O. Santiago said to P.O. J. M. Gates, "did you hear what he said about the President?", with a sly grin. During my revocation hearings stemming from this, to go home, at the suggestion of my attorney, I was scheduled to plead guilty and receive a Revoke and Restore. However, before sentencing, the Parole Revocation Specialist #1 stated that the

-1-

Division of Parole would need an adjournment because they were contemplating adding additional charges to my violation based upon threats they were informed I made against the President of the United States, which was obviously fabricated by and between S.P.O. Santiago and P.O. J. M. Gates. At the next revocation hearing the Parole Revocation Specialist #1 declined to add the additional charges. I was then sentenced and I was released from incarceration back to Post-Release Supervision on or about April 1, 2013.

3. From then (approximately April 1, 2013) on I was assigned a new Post-Release Supervision officer, P.O. Lee Lessner. During scheduled office reports, P.O. Lee Lessner constantly questioned me about my religious beliefs and also told me I would have to begin writing a journal detailing my daily travels, especially Mosque visits and activity. He did also ask me the names and locations of the Mosques that I frequented most.

4. Beteen approximately the beginning of June 2013 and July 29, 2013, I was attending the Success Counseling program as my Post-Release Supervision officer mandated. Said program is located at 1015 Ogden Avenue, Bronx, N.Y. 10452. During the pre-screening and other instances, I was informed by Wilbert Webb, a Senior Counselor of said program, in an unwarrantly stern manner that any behavior viewed by Mr. Webb to be unacceptable would be reported to my supervision officer P.O. Lee Lessner and may result in my re-incarceration. One day, after a counseling session, I along with other clients of program were engaged in conversation at the front desk with program Administrative Assistant Elpido Ortiz. While jokingly informing us of the personalities of program counselors, Elpido Ortiz became serious and said that we should be careful around Wilbert Webb because he is notorious for having program attendees locked up, which he had personally seen done. On or about July 10, 2013, during a private session I informed my counselor that during the month known to Muslims to be Ramadan that I am only able to submit to drug testing by urinalysis if I so happened to need

to urinate at the time of request. Otherwise, I am unable to drink water to enduce urination while I am fasting. On or about July 18, 2013, after a group counselimg session, a counselor by the name of Thomas Grant informed me that my private counselor had asked him if I was actually prohibited from drinking water while fasting or if he thought I was using my professed religion to cover not wanting to submit to urinalysis in fear of returning a positive substance use reading. After this information being given to me I voiced my distrust of facility staff and disapproval of discussion of what I confided to my counselor in private which I deem privileged information protected by law. He, Thomas Grant, informed me that he understood and gave me his business card ans said I may call him if I still felt further apprehensive toward dealings with other counselors. On July 29, 2013, while traveling to Success Counseling by train, I received a message on my cell phone from Elpido Ortiz, facility Administrative Assistant, stating that I had been clinically discharged from the program. Since I did not know about this message being on my answering machine, when I reached the facility this was again told to me by Elpido Ortiz. I asked why this was so and I also addressed the issue of my displeasure with facility staff actions and divulging of my private information between staff. At this time, counselor Wilbert Webb so happened to be present and we argued about the situation. I informed him that I would be filing a complaint. Shortly thereafter, I left the facility grounds. I called my supervision officer, P.O. Lee Lessner, to inform him of what happened but he did not answer his phone so I left a message on his answering machine.

5.   On July 31, 2013, while at a scheduled office report, P.O. Lee Lessner arrested me and said that he was informed that I allegedly made verbal Jihad threats at Success Counseling on July 29, 2013. S.P.O. Freeman authorized warrant after determining to revoke P.R.S.

6.   On August 12, 2013, at a preliminary hearing for Post-Release supervision revocation, after hearing the witness testimony, Administrative Law Judge Chandra Perry-Patterson made it clear that she would be unable to find probable cause to hold me because what he fabricated as a violation charge did not match his witnesses

testimony. Eventually, instead of releasing me back to Post-Release supervision, A.L.J. Chandra Perry-Patterson instructed P.O. Lee Lessner on how to rewrite the charge to obtain a conviction. Then, seeing his inability to correctly draft the new charge, A.L.J. Chandra Perry-Patterson went off the record and literally told P.O. Lee Lessner word for word what to write. Thus, the charge was changed from "Khaliq Sellers Violated Rule 8 of the Rules Governing Parole, in that on 7-29-2013, at approximately 6:30PM at the location of 1015 Ogden Ave., Bronx, N.Y., the subject behaved in a manner to cause fear and threaten the safety of Will Webb and members of the Success Drug Program. In that he did state he was going to commit the act of Islamic Jihad and everyone was going to die at the program." to, written in pen at bottom of page, "Khaliyq Sellers Violated Rule 8 of the rules govening Parole, In that on 7-29-2013 at approx 630PM at the location of 1015 Ogden Ave Bronx N.Y. the subject behaved in a manner to cause fear and threaten the safety of Will Webb and members of the Success Drug Progm In that he stated before I leave I will blow up the Place in the name of Allaha!" This, because it was known that the witness would say those words. Then, A.L.J. Chandra Perry-Patterson said a de novo preliminary hearing would be held on August 15, 2013 and that this was good because she would not be present that day. After this, I was further held on Rikers Island awaiting a second first hearing.

7.  On August 15, 2013, I was given a de novo hearing which equated to the Division of Paroles second first chance to have probable cause found, since an entire Preliminary Hearing was had on August 12, 2013. At the second Preliminary Hearing, Sharon Burnett, who presided as Administrative Law Judge, made it clear by demeanor that she personally had issue with me. During summation of hearing, P.O. Lee Lessner began attempting to liken me to some form of terrorist. He constantly made provocative statements, such as "todays climate with all the incidents going on in the world" and "based on todays climate and all that", etc. My then attorney made objections to these statements to which the A.L.J. took no issue of, at one point saying "its not a big thing, Counselor."

After one objection by my attorney, she even corrected PO.O. Lee Lessners testimony for him, saying "Fear in Mr. Webb," where he should have said such. After the hearing of evidence, though P.O. Lee Lessner had still not matched the charge to evidence, the A.L.J., Sharon Burnett, arbitrarily and capriciously found probable cause to hold me imprisoned until final hearing.

8.   On 9/19/13, during a revocation hearing appearance at the Rikers Island judicial center, I asked Correction Officer Matthew Pedlar if I could be placed in the cell adjacent to the cell I had been in already. I usually ask this of Correction Officer Hawkins as he allows me this courtesy in which I am able to pray in peace. Such is a common request of an inmate to an officer. However, C.O. Hawkins was temporarily busy, which is why I asked C.O. Pedlar. C.O. Pedlar replied by informing me to shut the fuck up and get back in the cell I was in. I then informed him that I wished to be placed in the cell because I needed to offer my prayers. To this, C.O. Pedlar stated, "if you were a real muslim praying in the street you wouldn't be in jail now," and again said get the fuck back in the cell. I did notice C.O. Hawkins and tried to get his attention. While doing this, C.O. Pedlar continued mocking me while he was joking with other inmates, and said to the affect of, "he's probably afraid of one of you and that's why he wants to be in a separate cell," which drew laughter from the inmates C.O. Pedlar was talking to. C.O. Hawkins was coming over to allow me to use said adjacent cell when C.O. Pedlar informed him it wasn't happening. They had a discrepancy and I was also attempting to speak which logically became loud with everyone trying to speak at the same time. Now, C.O. Epstein came over and got involved, adding to the volume. Obviously an incident between correction officers isn't going to be allowed to go but so far, so C.O. Pedlar took his anger out on me. Now, C.O. Loadholt came over and decided to handcuff me and took me to another cell. I verbally protested the incident to which a C.O. said, "if you don't shut the fuck up, we are going to come in there..." obviously implying using the common violence of C.O.'s on inmates. To this I said, "that's alright

-5-

because I'm going to file a complaint as soon as I get to a phone." This went ignored by most C.O.'s present, except that this statement caught the attention of C.O. Pelluso, who was at no point on the scene, except that he appeared shortly before the statement I made. C.O. Pelluso began whispering to the other C.O.'s though I could hear the entire conversation since the C.O.'s desk was within a few feet of the cell I was now in. C.O. Pelluso informed the C.O.'s that something had to be done before I made the complaint. The other C.O.'s, though listening, appeared to not be giving much weight to what C.O. Pelluso was saying. One C.O. said to the affect of, "ah, he'll be 'aight in a minute. He's just talkin' shit," and waved a dismissive hand in my direction. After further provocation from C.O. Pelluso and huddled conversation, C.O. Pelluso said, "let me write it." I then saw C.O. Pelluso writing on a piece of paper. When he was done, he approached C.O. Epstein and said to the affect of, "it's best if it comes from you." He then handed C.O. Epstein the paper, which C.O. Epstein hesitantly took from C.O. Pelluso. I was eventually taken back to my Rikers Island housing facility.

9.   Said incident at the Rikers Island judicial center led to an infraction which was fabricated by C.O. Pelluso and written by C.O. Epstein. Said infraction appears similar to my parole revocation charges due to the officers knowing why I was incarcerated since it is common for correction officers to discuss the cases of the inmates with the inmates during recreational conversation. Such conversation is common between correction officers and inmates since C.O.'s working on Rikers Island are commonly from the same background and neighborhoods as the inmates and are sometimes friends of the inmates or have some association with the inmates, such a gang affiliation, etc. Said infraction led to additional charges being added to my Post-Release supervision charges written by Parole Revocation Specialist Leleith Shaw who was already handling the case on behalf of the Parole Division. I was never given a preliminary hearing on the additional charges nor was a separate Notice of Violation prepared.

10. Final Post-Release revocation hearings were had on November 4, 2013, and November 21, 2013. Ultimately, I was found guilty of all charges, though every witness served to impeach themselves and one another. At no point was a single piece of evidence given against me. On November 21, 2013, to attempt to enhance their concocted presentation of my character, Parole Revocation Specialist Leleith Shaw had a sudden outburst to the ALJ, claiming I was making her feel uncomfortable by making facial jestures and staring, to which I informed ALJ was false and requested courtroom video surveillance playback, which was denied. I did also wish to pose objections numerous times and I did wish to be assigned new counsel, to which ALJ informed me I am not allowed to speak in her court.

11. During the administrative appeal process, the Division of Parole refused to supply me with the complete hearing minutes so that I may perfect my appeal, though my then attorney, Naila Siddiqui of Legal Aid Society and I wrote the Division of Parole concerning this many times. To date, I have also written the Division of Parole requesting documents via FOIL laws which have gone ignored. I have also written the chairwoman Tina Stanford informing her of my concerns, including the fact that all was fabricated by P.O. Lee Lessner, which all went ignored. I asked that she rectify the situation to prevent any further litigation and because it was the right thing to due and her duty as overseer.

12. The aforesaid conspiracy/ collusion also includes many more Constitutional and proceedural violations, from correctional facility mail tampering to violations by patriotic correctional staff/ officers. As to the actions of Supreme Court judges, my first Habeas Corpus was denied by a Bronx County Supreme Court judge who said I am correct that an administrative law judge is not authorized to order a de novo preliminary hearing, but my second preliminary hearing wasn't a de novo hearing, but a continuation of adjournment. This after the ALJ herself said she's ordering a de novo hearing. Down to my last Habeas Corpus in which a Dutchess County Supreme Court judge set a decision date as after my release date which is known to him, obviously so he can automatically rule the petition as moot. And in between, a Habeas Corpus in Washington Couty, which the judge denied, stating if my arguments are correct, I wouldn't be entitled to immediate release, to which the Attorney General's office admitted was an incorrect ruling.

13. Due to the discrimination/ hatred of my religion, all aforesaid individuals in conspiracy/ collusion intentionally caused my incarceration or aided in it by using fraud and deception and blatant lies/ fabrications and official policy/ custom, such as the N.Y.P.D. program known as "Muslim Mapping" which caused me to be denied constitutional rights, along with never before attempted actions of the N.Y.S.D.O.C.C.S. Division of Parole which include revocation by way of impossible to prove statement and aiding/ acting as agent to N.Y.P.D. in matters not related to the duties and functions of the Division of Parole, I have been falsely imprisoned and maliciously prosecuted, lost my home, career, business, finances, personal property, family by way of death or disownment, associations/ affiliations, and now suffer from high anxiety, severe depression, insomnia, adjustment disorder, post-tramatic stress, along with fear of practicing my religion.

**FISHKILL CORRECTIONAL FACILITY**
BOX 1245
BEACON, NEW YORK 12508

NAME: KHALIYQ SELLERS      DIN: 07-A-0883

USM P3
SDNY

PRO SE OFFICE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
DANIEL PATRICK MOYNIHAN UNITED STATES COURTHOUSE
500 PEARL STREET, ROOM 230
NEW YORK, NEW YORK 10007

FISHKILL CORRECTIONAL FACILITY

neopost 07/15/2016
US POSTAGE $009.46
ZIP 12508
041L11251113

7015 1520 0001 2094 034

CERTIFIED MAIL


